UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

EDWAN THURMOND           )
                         )
        Plaintiff,       )    3:11-cv-00100-ECR-VPC
                         )
    v.                   )
                         )    **REPORT AND RECOMMENDATION**
                         )    **OF U.S. MAGISTRATE JUDGE**
                         )
DARIN COOL, ET AL.       )
                         )    January 9, 2012
        Defendants.      )
                         )

     This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's motion to dismiss (#10).[1] Plaintiff opposed (#15) and defendant replied (#16). The court has thoroughly reviewed the record and recommends that defendant's motion to dismiss (#10) be denied.

### I. HISTORY & PROCEDURAL BACKGROUND

     Plaintiff Edwan Thurmond ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#4). The events giving rise to the filing of this complaint occurred while plaintiff was housed at Nevada State Prison ("NSP") and High Desert State Prison ("HDSP"). *Id*. Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights. *Id*. Pursuant to 28 U.S.C. § 1915A, the court screened the complaint and plaintiff's only remaining claim alleges a First Amendment violation of his right to access to the courts against Darin Cool (#7).[2] During all relevant times, Darin Cool was a corrections sergeant at HDSP. *Id*. Defendant Cool ("defendant") brings the instant motion to dismiss (#10) plaintiff's

---

    [1]    Refers to the court's docket number.

    [2]    The court dismissed plaintiff's Fourteenth Amendment claims (#7).

complaint.

In count I, plaintiff alleges that on July 27, 2008, a NSP senior correctional officer collected plaintiff's personal belongings for transfer to HDSP (#4, p. 4). Plaintiff claims that after his transfer to HDSP, defendant Cool violated plaintiff's right to access to the courts when he confiscated plaintiff's legal materials, rendering plaintiff unable to successfully pursue a petition for a writ of habeas corpus. *Id*. at 4-7. Specifically, plaintiff contends that three CDs of legal materials, which defendant confiscated, demonstrated plaintiff's innocence, and that plaintiff was unable to prove his innocence without the CDs. *Id*. at 4.

Defendant moves to dismiss plaintiff's complaint and argues that plaintiff's claim should be dismissed because: (1) plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative Regulation ("AR") 740; (2) plaintiff's claim is barred by res judicata; and (3) plaintiff's claim is barred based on his election of remedies (#10).[3] Defendant argues that plaintiff failed to properly exhaust his administrative remedies because he did not complete all three levels of the grievance process. *Id*. at 5. In support of this assertion, defendant attaches the applicable versions of AR 740 and plaintiff's inmate grievance history from June 20, 2005, to June 20, 2011 (#10-2, Exs. C, D). Defendant also attaches copies of plaintiff's actual grievances for relevant grievances (#10-1, Ex. B). The court thoroughly reviewed plaintiff's grievances and determined that the grievances relevant to plaintiff's claim are grievances 20062767415 and 20062783928.

The court now recounts the events that ensued over the seven-month period after plaintiff's transfer to HDSP. On July 27, 2008, a NSP correctional officer packed plaintiff's personal belongings for transfer to HDSP (#4, p. 4). The correctional officer recorded plaintiff's property on an inmate inventory transfer sheet. *Id*. On July 28, 2008, plaintiff arrived at HDSP and claims that defendant Cool "was working in the property room where he unpacked [plaintiff's] property and

---

[3] Defendant also argues in a footnote that plaintiff's claim is barred by the statute of limitations (#10, p. 4). However, this court already determined that plaintiff did not know of his injury until June 5, 2009, when the Nevada Supreme Court denied his habeas petition (#7, p. 2). Plaintiff filed this lawsuit on February 11, 2011, and the statute of limitations does not bar plaintiff's claim (#1).

2

confiscated several items of [plaintiff's] property including 3 compact discs which contained legal material," which plaintiff needed for his state habeas corpus proceeding. *Id*. at 4-5. Plaintiff states that he made several requests for the CDs, but defendant refused to return them. *Id*. at 5. Plaintiff "was forced to complete the habeas pleadings without the legal materials contained on the CDs," and he did not succeed in his habeas petition. *Id*. Plaintiff appealed his habeas denial to the Nevada Supreme Court and again requested the return of his CDs, but they were not returned. *Id*.[4]

On July 29, 2008, two days after defendant Cool confiscated his property, plaintiff commenced the grievance process in an effort to regain possession of his property (#10-1, Ex. B, B-1). Plaintiff filed informal grievance 20062767415, and grieved not receiving his property, which was listed on the inmate inventory transfer sheet, including three legal CDs which were removed from his legal box. *Id*. On August 11, 2008, NDOC denied the grievance and stated in an improper grievance notice that plaintiff "must attach a copy of property inventory." *Id*. at B-1, B-3. On September 18, 2008, plaintiff signed the grievance form acknowledging receipt, and stated that he disagreed with the response. *Id*. at B-1.

On September 15, 2008, plaintiff submitted informal grievance 20062783928 in response to the improper grievance notice he received. *Id*. at B-4. Plaintiff stated that "this is my second informal [grievance] to obtain my property." *Id*. Plaintiff provided a copy of his inventory sheet with this grievance and noted the property, which had not been returned to him, including three legal CDs. *Id*. at B-5, B-7. On September 23, 2008, NDOC denied this grievance stating that it contained "more than 1 issue." *Id*. at B-4. Plaintiff grieved only one issue in this grievance – the return of his property, and he listed several items which he asked to be returned to him. On September 29, 2008, the HDSP grievance coordinator responded that grievance 20062783928 contained more than one issue, and that plaintiff should contact his caseworker or submit an inmate request form to the department for which he had questions. *Id*. at B-8. The HDSP grievance coordinator also stated that the grievance was improper because plaintiff failed to attach documents showing proof of ownership. *Id*. Plaintiff had already submitted a copy of his property inventory sheet and, it is unclear why

---

[4] Plaintiff's complaint (#4) does not discuss the time frame for these events.

plaintiff now needed to show receipts of proof of ownership.

Nevertheless, on November 14, 2008, plaintiff filed a first level grievance as to both grievances 20062767415 and 20062783928. *Id*. at B-10. Plaintiff stated that HDSP had a copy of his inventory sheet on file, as well as the one he submitted to them in informal grievance 20062783928. *Id*. He noted that HDSP did not have forms for a first level grievance, and he had to use the second level grievance form as a substitute. *Id*. Plaintiff provided a handwritten attachment, which indicated that his three legal CDs were never returned to him. *Id*. at B-12. Plaintiff stated that he was at HDSP for two-and-a-half months and wrote three grievances in an attempt to get his property back. *Id*. Plaintiff also explained that he attempted to go to his caseworker to no avail. *Id*. Plaintiff expressed his confusion and stated, "I can do no more. I've exhausted all the remedys [sic] I know how to resolve my property issues." *Id*.

On November 10, 2008, while at NSP, plaintiff signed a NDOC Inmate Personal Property Claim Form for property in the amount of $318.24, and listed the three legal CDs. *Id*. at B-13, B-15. On December 2, 2008, the NSP grievance coordinator sent a notice to the HDSP grievance coordinator and stated: "This issue occurred at your facility. Please address and return to NSP when it is completed." *Id.* at B-17.[5] On December 18, 2008, defendant Cool responded to grievance 20062767415 and stated that the items confiscated at HDSP were not authorized property. *Id*. at B-18.[6] Defendant Cool listed several items as unauthorized items, but did not list the three legal CDs which were clearly the subject of plaintiff's grievances. *Id*. Defendant Cool further stated that because plaintiff was housed at NSP, plaintiff's property file was located at NSP. *Id*. Plaintiff then filed second level grievance 20062767415 and asked that NSP fax a copy of his property card to

---

[5] AR 740.1.6 governs grievances for inmates who are transferred. However, it only discusses situations where an inmate has a pending grievance at the sending institution and states that the grievance coordinator at the sending institution should respond to the grievance. The grievance arose at HDSP because that is where defendant Cool allegedly confiscated the CDs.

[6] Plaintiff claims in his complaint that in December 2008 he received an unauthorized property notification from defendant Cool informing plaintiff that his legal CDs were destroyed (#4, p. 6).

4

HDSP, which itemized the property he still had not received. *Id.* at B-19, B-20.[7] Plaintiff explained in detail that he provided everything NDOC needed to review his property claim, and he also stated that he never signed an unauthorized property form.[8] *Id.* at B-20. On February 13, 2009, the grievance responder asked plaintiff to re-file his grievance with the supporting documentation attached. *Id.* at B-19. On February 27, 2009, NDOC sent plaintiff a notice that his grievance was improper because of a lack of documentation and that he should attach the informal and level one responses to the grievance and resubmit his grievance. *Id.* at B-21. On March 11, 2009, plaintiff acknowledged receipt of this notice. *Id.* Plaintiff filed this action on February 11, 2011 (#1).

In his motion to dismiss, defendant Cool relies on a state district court order which dismissed plaintiff's civil rights claim, and argues plaintiff's claim is barred by res judicata and by plaintiff's election of remedies (#10-3, Ex. F). Defendant Cool contends that the state district court order was a final adjudication on the merits of plaintiff's claim (#10, pp. 6-9). However, the Nevada Supreme Court recently reversed the state district court order dismissing plaintiff's civil rights claim and remanded the matter to the state district court. *Thurmond v. Cool*, No. 57048, 2011 WL 6174690 (Nev. December 9, 2011). Neither res judicata nor election of remedies is now a basis upon which to consider defendant's motion to dismiss in light of the Nevada Supreme Court's order of reversal and remand. Therefore, this court will only decide whether plaintiff's claim should be dismissed for failure to exhaust his administrative remedies. Plaintiff opposes defendant's motion to dismiss and argues he should be excused from his failure to exhaust administrative remedies because defendant did "everything within his power to confuse plaintiff" during the grievance process (#15, p. 2).

## II. DISCUSSION & ANALYSIS

A.  **Discussion**

Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional

---

[7] Plaintiff states that there are two pages of the continuation form; however, defendants only include page 1 (#10-1, Ex. B, B-20).

[8] Defendant Cool states plaintiff signed an unauthorized property form (#10-1, Ex. B, B-18).

5

requirement, and defendants bear the burden of raising and proving that the plaintiff has not exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading. *Jones*, 549 U.S. at 216.

Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. The court may look beyond the pleadings to decide disputed issues of fact without converting the motion into one for summary judgment; however, "if the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.").

### 1. Prison Litigation Reform Act of 1996

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

6

Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (emphasis in original). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle,* 534 U.S. at 524-25. *See Wyatt*, 315 F.3d at 1112.

### 2. NDOC Procedures

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. The NDOC grievance procedure is governed by AR 740 (#10-2, Ex. D). For plaintiff to exhaust available remedies at the time of his injury, AR 740 requires the following: (1) an informal review level, which "shall be reviewed and responded to by the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "shall be reviewed and responded to by the Warden;" and (3) a second level grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." *Id.* at 10; 42-44.[9]

Once received, NDOC logs informal grievances into a tracking system. *Id.* at 13. According to AR 740, effective January 2004, the caseworker assigned to the grievance will provide the inmate with a response within twenty-five days, unless more time is required to conduct further investigation. *Id*. at 12. According to AR 740, effective November 2009, the caseworker will provide the inmate with a response within forty-five days. *Id*. at 44. If the inmate is not satisfied by NDOC's response to his informal grievance, he may appeal the decision within five days by filing a first level grievance. *Id*. at 15; 44. According to AR 740, effective January 2004, NDOC will provide a response within twenty days of receipt of the first level grievance. *Id*. at 16. According to AR 740, effective November 2009, NDOC will provide a response within forty-five days of

---

[9] The first page number refers to AR 740, effective January 2004. The second page number refers to AR 740, effective November 2009.

7

receipt of the first level grievance. *Id*. at 45. Finally, if the inmate is not satisfied with the first level grievance outcome, he may file a second level grievance, to which NDOC will respond within twenty days. *Id.* at 17. According to AR 740, effective November 2009, he may file a second level grievance, to which NDOC will respond within sixty days. *Id*. at 45. Upon completion of the grievance process, the inmate may pursue civil rights litigation in federal court.

**B.      Analysis**

Defendant argues that plaintiff's complaint should be dismissed because plaintiff failed to exhaust his administrative remedies. Defendant claims that plaintiff abandoned grievance 20062783928 and failed to properly exhaust grievance 20062767415 through the three levels of review (#10, pp. 2-5). Plaintiff states that "defendant has done everything within his power to confuse plaintiff" throughout the grievance process (#15, p. 2). Plaintiff argues that as a result, plaintiff's action should not be dismissed on this ground. The court agrees.

Under the PLRA, as amended, prisoners must exhaust "such administrative remedies as are *available*" prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997(e)(a) (italics added). A prisoner's failure to exhaust may be excused if he can demonstrate that the grievance process is unavailable to him because: (1) administrative procedures are unavailable (for example, if he is unable to obtain the requisite forms); (2) prison officials obstructed his attempts to exhaust; or (3) prison officials failed to follow procedures for processing grievances. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Further, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *Id*. To be available "a remedy must be capable of use for the accomplishment of its purpose." *Id.* at 1224 (citing *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)). Here, plaintiff is excused from the requirement of exhaustion because he took reasonable and appropriate steps to exhaust his claim and was precluded from exhausting, not through his own fault, but because defendant Cool and others either inadvertently or deliberately obstructed his continued efforts to grieve this issue pursuant to AR 740.

Plaintiff availed himself of all possible opportunities to exhaust his administrative remedies

with respect to his First Amendment access to the courts claim. Plaintiff filed informal grievance 20062767415 immediately upon his transfer to HDSP, grieving his missing property, including three legal CDs (#10-1, Ex. B, B-1). Despite the fact that HDSP should have been in possession of plaintiff's property inventory sheet, they denied this grievance and requested that plaintiff attach a copy of his property inventory sheet. *Id*. at B-3. In response to this denial, plaintiff filed a second informal grievance, 20062783928 regarding his three legal CDs and attached a copy of his property inventory sheet. *Id*. at B-4. Once again, NDOC denied the grievance and stated that plaintiff grieved "more than 1 issue," despite the fact that plaintiff clearly grieved one main issue – that his property, including several items, be returned to him. *Id*. At this time, an HDSP grievance coordinator informed plaintiff that he needed to discuss the issue with his caseworker or the department for which he had a question, and that he must attach receipts showing proof of ownership. *Id*. at B-8. Plaintiff already submitted a copy of his property inventory sheet, and it is not clear why HDSP now requested additional proof of ownership. Prison officials obstructed plaintiff's attempt to exhaust when they requested documents they should have already possessed, improperly denied a grievance, and requested additional proof of ownership.

Despite these obstacles, plaintiff continued with his efforts to regain his property and exhaust his administrative remedies. Plaintiff filed a first level grievance as to both 20062767415 and 20062783928 and stated that while at HDSP, he filed three grievances regarding his property and addressed the issue with his caseworker to no avail. *Id*. at B-10, B-12. Plaintiff stated: "I can do no more. I've exhausted all the remedys [sic] I know how to resolve my property issues." *Id*. at B-12. Defendant Cool denied the grievance and responded that the items confiscated were not allowed at HDSP.[10] *Id*. at B-18. However, the items defendant Cool listed as unauthorized did not even include the three legal CDs, which were clearly the subject of plaintiff's grievances. Defendant Cool further noted that because plaintiff was housed at NSP, plaintiff's property file was located at NSP. *Id*. In

---

[10] Plaintiff notes that he used a second level grievance form as a substitute because HDSP did not have forms for a first level grievance (#10-1, Ex. B, B-10). Plaintiff filed this grievance while at NSP and a NSP grievance coordinator sent the grievance to a HDSP grievance coordinator because the issue being grieved occurred at HDSP.

9

response, plaintiff filed second level grievance 20062767415 and requested that NSP fax a copy of his property card to HDSP, which itemized the property he still had not received. *Id.* at B-19. Plaintiff thoroughly explained that he provided HDSP with everything they needed to review this issue, including a copy of his property inventory sheet. *Id*. at B-20. He also stated that he never signed an unauthorized property form even though defendant Cool alleged that he did sign this form. *Id*.[11] Nevertheless, a NSP grievance coordinator denied this grievance on the ground that plaintiff needed to attach his informal and level one responses to the grievance and resubmit. *Id*. at B-21.

Despite plaintiff's diligent efforts to properly exhaust his administrative remedies with respect to the confiscation of his three legal CDs, defendant Cool and other prison officials repeatedly obstructed his attempts. Plaintiff exhausted all *available* remedies by supplying prison officials with his property inventory sheet, addressing his property issue with his caseworker, and filing numerous grievances, which thoroughly explained his simple request. In response, prison officials requested additional unnecessary documents, denied grievances, and frustrated plaintiff's attempts to exhaust his administrative remedies.

"Just as the PLRA's exhaustion requirement gives prisoners the proper incentive to pursue their complaints efficiently, excusing that requirement under the circumstances of this case gives prison officials the same incentive to address prisoners' complaints." *Nunez*, 591 F.3d at 1226. Plaintiff made every effort to address his claim through the prison grievance process, but prison officials prevented him from doing so. Moreover, taking plaintiff's allegations in his complaint as true, as the court must, defendant Cool told plaintiff that his "legal material had been destroyed" (#4, p. 6).[12] Thus, plaintiff has alleged a First Amendment violation of his right of access to the courts claim. This court will not permit prison officials' and defendant's intentional or inadvertent obstruction of plaintiff's attempts to exhaust bar plaintiff from pursuing this action. Under the

---

[11] The court notes that plaintiff states that there are two pages of the continuation form; however, defendant's copy of the grievance includes only page 1 (#10-1, Ex. B, B-20).

[12] The court must accept plaintiff's allegations in his complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

10

circumstances of this case, the prison officials' actions rendered plaintiff's administrative remedies unavailable, and his failure to exhaust is thereby excused. *See Nunez*, 591 F.3d at 1224. The court recommends that defendant's motion to dismiss (#10) be denied.[13]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court recommends that defendant's motion to dismiss (#10) be **DENIED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss (#10) be **DENIED.**

**DATED**: January 9, 2012.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Defendant seeks sanctions against plaintiff pursuant to Nevada Revised Statute 209.451(1)(d) stating that plaintiff filed his claim for an improper purpose and that plaintiff misrepresented facts to this court in his complaint (#10, pp. 10-11). However, defendant's counsel cites to a statute which authorizes an *NDOC Director* to deduct an inmate's good-time credits, and such a deduction of plaintiff's good-time credits affects the duration of his sentence. The court declines to award sanctions.